IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                      Criminal Action No. 5:12CR22
                                                            (STAMP)
CORDALE A. WILLIAMS,

       Defendant.

**MEMORANDUM OPINION AND ORDER**
**AFFIRMING AND ADOPTING REPORT AND RECOMMENDATION**
**OF MAGISTRATE JUDGE TO SUPPRESS EVIDENCE,**
**DECLINING TO ADOPT REPORT AND RECOMMENDATION**
**OF MAGISTRATE JUDGE TO SUPPRESS STATEMENTS**
**AND DENYING DEFENDANT'S MOTIONS TO SUPPRESS**

I.  Procedural History

On August 7, 2012, the grand jury indicted the defendant, Cordale Williams, on one count that charges him with being a felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The indictment also contains a forfeiture allegation seeking the forfeiture of a Smith & Wesson 9 millimeter pistol, Model M&P. The defendant was arraigned on August 22, 2012.

On September 17, the defendant first filed a motion to suppress statements made during an interview at the Northern Regional Jail. Within this motion, the defendant asserts that such statements were made in violation of his Constitutional rights as he had invoked his right to counsel and agents of the Bureau of Alcohol Tobacco and Firearms ("ATF") continued to question the

defendant.  The United States filed a response arguing that the defendant waived his right to counsel after initiating further communication with law enforcement as the statements made by the ATF agent was not the functional equivalent of interrogation. Therefore, the United States argues such statements are admissible.

On the same day, the defendant also filed a motion to suppress evidence.  The motion seeks to suppress the results of a gun shot residue ("GSR") test.  The defendant argues that the GSR test was conducted without a warrant and it was not supported by probable cause and exigent circumstance.  Therefore, the defendant states that such a search violated the defendant's Fourth Amendment rights.  The United States responds by arguing that probable cause and exigent circumstances did exist for such a search and it was a lawful search incident to the arrest.

On October 17, 2012, United States Magistrate Judge James E. Seibert held a hearing on the defendant's motions.  Following this hearing, the magistrate judge issued two separate reports and recommendations concerning the motions mentioned above.  The magistrate judge recommended that this Court grant the defendant's motion to suppress the statements and deny the motion to suppress evidence.  The parties filed a motion on November 11, 2012, requesting an extension to file objections to the magistrate judge's report and recommendation.  This Court granted that motion and ordered that objections be filed by November 27, 2012.  On

November 27, 2012, the United States filed objections to the report and recommendation concerning motion to suppress statements and the defendant filed objections to the report and recommendation concerning the motion to suppress evidence. Thereafter, on December 12, 2012, the defendant filed a response to the United States' objections to the report and recommendation concerning the motion to suppress statements.

This Court now affirms and adopts the report and recommendation of the magistrate judge concerning the motion to suppress evidence, and declines to adopt the report and recommendation of magistrate judge concerning the motion to suppress statements. Consequently, defendant's motion to suppress are each denied.

## II. Facts

On June 22, 2012, in Wheeling, West Virginia, two police officers responded to a gun shot at the 7-11 convenience store in downtown Wheeling. After the officers arrived at the store, various people near the scene claimed that the shooter had been "the guy with the dreads." Thereafter, the officers were approached by the alleged victim of the shooting, David Lee. Mr. Lee was in possession of a gun, which he said was used by the defendant to shoot at Mr. Lee. Mr. Lee claimed to have recovered the gun from under a car where he claims the defendant threw it

after he shot at Mr. Lee.  The officers then stopped the defendant from leaving the scene and placed him under arrest.

Thereafter, the defendant was transported to the Wheeling Police Department, where he was handcuffed to a chair in the interview room.  After arriving at the police station and before being fingerprinted, an officer administered a GSR test upon the defendant.  The West Virginia Police Forensic Laboratory tested a sample obtained from that test, which revealed GSR on the defendant's right hand.

On June 29, 2012, five days after the initial arrest took place, ATF agents attempted to interview the defendant while he was incarcerated at the regional jail.  The agents read the defendant his rights, and the defendant signed a waiver form.[1]  After asking the defendant to discuss the events surrounding the shooting on June 22, Agent Joseph Price testified that the defendant replied that he thought it may be best to wait to speak to an attorney.  As the agents were departing, Agent Price stated if the defendant did not have any further questions, then the agents would depart.  The defendant then asked the agents if they knew the difference between state and federal law regarding an attempted murder, as he had done some research and he knew the answer, but wanted to make sure.  The

---

[1]The ATF uses a standard form, Form 3200.4: Advice of Rights and Waiver, to inform a suspect of his rights, and to obtain a waiver of those rights.  The rights in the form are consistent with those required under Miranda v. Arizona, 384 U.S. 436 (1966).

defendant then continued to talk and said he thought it had to be proven that the person intended to kill the other person. Agent Price responded in an attempt to explain the intent element of the crime. The defendant replied that he thought attempted murder required a showing that the firearm was shot above the waist. Agent Price then explained that a gunshot wound to the leg could be just as fatal as one sustained above the waist. Thereafter, the conversation ended and the agents left the interview room.

### III. Applicable Law

Under the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(B), a magistrate judge may be designated by a district court to consider motions to suppress evidence and statements as unconstitutionally obtained. After the magistrate judge has considered such a motion, he must submit '"proposed findings of fact and recommendations for the disposition.'" Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983). Parties are entitled to file written objections to the findings and recommendations of the magistrate judge, and if a party chooses to object within the fourteen-day period allotted by the Act, the district court shall make a de novo review of the findings and recommendations objected to. Id. and 28 U.S.C. § 636(b)(1)(C). Any findings to which no party objects are upheld by the district court unless "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(C).

Here, the defendant filed objections to the magistrate judge's report and recommendation concerning the motion to suppress evidence and the United States filed objections to the magistrate judge's report and recommendation concerning the motion to suppress statements. All findings challenged by these objections will be reviewed de novo.

## IV. Discussion

### A. Gun Shot Residue Test Results

The defendant argues that the GSR test, conducted after the defendant's arrest, was conducted without a warrant and was not supported by probable cause and exigent circumstance. Therefore, the defendant states that such a search violated the defendant's Fourth Amendment rights and that this Court should suppress the results of the warrantless search. The defendant argues that probable cause did not exist because only two unnamed witnesses and an alleged victim identified the defendant, which the defendant asserts does not "add up to probable cause." The defendant contends that exigent circumstances also do not exist as he asserts that there was "no possibility" that the defendant could have destroyed evidence on his person or washed his hands.

The United States responds by stating that probable cause did exist to arrest the defendant as three separate people identified the defendant as the alleged shooter. It also contends that exigent circumstances exist given the inherent destructibility of

gunshot residue evidence. Further, the United States asserts that no explanation by the defendant has been provided as to why the additional measure of obtaining a warrant would be necessary given the risk of destructibility and the minimal nature of the intrusion.

The magistrate judge found that the arrest was lawful as probable cause existed to make the arrest. The magistrate judge stated that all of the evidence available to the officers indicated that the defendant was the shooter and it was, therefore, reasonable for the officers to believe the defendant was the suspect and to arrest the defendant.

In his objections, the defendant states that he objects to the report and recommendation as the United States Court of Appeals for the Fourth Circuit has not published a binding opinion on the issue of whether a swab GSR test is a reasonable search incident to arrest. The defendant argues that the Fourth Circuit only gave qualified approval to a warrantless GSR test in United States v. Simmons, 380 F. App'x 323 (4th Cir. 2010), and that such approval was fact-specific. Moreover, Simmons is an unpublished case that the defendant argues is not controlling authority. The defendant also contests the magistrate judge's finding that there was probable cause to arrest the defendant as he believes that the lack of investigation on the morning of the incident contradicts the conclusion that there was probable cause to arrest the defendant.

"It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to few specifically established and well-delineated exceptions.'" Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). Such an exception exists, when the search is "incident to a lawful arrest." United States v. Currence, 446 F.3d 554, 556 (4th Cir. 2006) (citing United States v. Robinson, 414 U.S. 218, 224 (1973)). "Pursuant to this exception, law enforcement officers following a lawful arrest may search "the arrestee's person and the area 'within his immediate control.'" Simmons, 380 F. App'x at 330-31 (citing Chimel v. California, 395 U.S. 752, 763 (1969)). The Fourth Circuit stated in Simmons, "the GSR test, a 'very limited search,' was appropriate as a search incident to arrest" after it found that Simmons did not contest the lawfulness of the arrest. 380 F. App'x at 330; see United States v. Allen, 358 F. App'x 697, 699 (7th Cir. 2009) (finding no Fourth Amendment violation concerning a GSR test conducted without a warrant as "the delicate nature of the gunshot residue required law enforcement to administer the test quickly before the evidence could be wiped off or destroyed"); see United States v. Johnson, 445 F.3d 793, 795-96 (5th Cir. 2006) (finding no Fourth Amendment violation concerning a GSR test so long as the arrest was valid, as the "presence of gun powder on his hands was

8

relevant" and the defendant "could have eventually removed or destroyed" the evidence). Whether an arrest is lawful turns

> upon whether, at the moment the arrest was made, the officers had <u>probable cause</u> to make it -- whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

<u>Beck v. State of Ohio</u>, 379 U.S. 89, 91 (1964)(emphasis added).

Based on the statements made to the officers on the scene and the identification of the defendant by the victim, Mr. Lee, this Court agrees with the magistrate judge's findings that probable cause did exist to arrest the defendant. According to the Sixth Circuit,

> An eyewitness identification will constitute sufficient probable cause unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation.

<u>Ahlers v. Schebil</u>, 188 F.3d 365, 370 (6th Cir. 1999) (internal quotations omitted and citations omitted). There is no indication that any of the eyewitnesses were lying in identifying the defendant. Further, no other circumstances exist that provide any other basis for believing that the eyewitnesses' statements lack credibility. Although the defendant feels that <u>Simmons</u> only provided qualified approval regarding conducting a GSR search without a warrant incident to arrest, this Court believes that the only qualification the Fourth Circuit indicated was the requirement

9

that it be conducted pursuant to a lawful arrest. As indicated, this Court finds that such arrest was in fact lawful, as the officers had probable cause to make the arrest and, therefore, the magistrate judge's report and recommendation concerning the motion to suppress evidence is affirmed and adopted.

B.   <u>Statements Made to ATF Agents</u>

The defendant next argues that this Court should suppress statements that the defendant made a week after his arrest during an interview conducted while he was held in the regional jail. The defendant argues that such statements were made after he unequivocally invoked his right to counsel during the interview. The defendant further argues that by stating if the defendant did not have any further questions the agents would be leaving, the agents were continuing questioning. Therefore, the defendant states that because the agents did not cease their questioning they violated his rights under <u>Edwards v. Arizona</u>, 451 U.S. 477 (1981), and those statements made after his invocation of his right to counsel should be suppressed.

The United States responds by stating that it could show by a preponderance of the evidence that after the defendant asserted his right to counsel, he initiated further communication with the agents. The United States argues that the agents did not directly question the suspect, use any psychological ploys, or attempt to coerce a statements from the suspect. Further, it argues that such

10

statements were not designed to seek an incriminating response. Therefore, the United States believes that such statements should not be suppressed.

The magistrate judge issued a report and recommendation, wherein he recommended that this Court grant the defendant's motion to suppress the statements. The magistrate judge first found that the defendant did invoke his right to counsel. The magistrate judge then proceeded to find that the agent's comment informing the defendant that if he had no more questions the agents would leave, was also the functional equivalent of interrogation. The magistrate judge referred to the agent's comment as "a clever psychological ploy" that was "sure to elicit a response."

The United States filed a timely objection to the magistrate judge's report and recommendation. Specifically, the United States objects to the magistrate judge's conclusion that the agent's comment constituted the functional equivalent of interrogation. The United States contends that there is nothing in the record to suggest that the agent should have known that his statement would be reasonably likely to elicit an incriminating response from the defendant. The comment, the United States argues, is nothing more than an indirect but neutral inquiry that the agent could not have known would elicit an incriminating response from defendant. The United States does not object to the magistrate judge's finding that the defendant did invoke his right to counsel.

The defendant filed a response to the government's objections. Within this response, the defendant states that the issue in this case is whether the agent's comments, or as he refers to it "continued questioning," took place after the defendant invoked his right to counsel. Due to the agent's continued questioning after the defendant invoked his right to counsel, the defendant argues that his rights were violated. Further, the defendant takes issue with the government's assertion that the agent's statement can only be viewed as nothing more than an indirect but neutral inquiry that the agent could not have known would elicit an incriminating response from the defendant. The defendant argues that when the Supreme Court and the Fourth Circuit have held that the statements constitute the functional equivalent of interrogation, the primary focus of the inquiry should be "the perceptions of the suspect, rather than the intent of the police." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). Also, the defendant argues that regardless of whether the agent routinely ends his interview by allowing the defendant to ask questions is of no importance.

Based on Supreme Court case law, once a suspect asserts his right to counsel, he cannot be subjected "to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). "If the suspect's statement is not an

unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." Davis v. United States, 512 U.S. 452, 461-62 (1994) (finding that the statement, "Maybe I should talk to a lawyer," was not a request for counsel). The Fourth Circuit in United States v. Johnson, 400 F.3d 187, 194 (4th Cir. 2005), listed the following examples of statements made by defendants that courts have found to be equivocal and thus do not amount to requests for counsel under the Edwards standard:

> "I might want to talk to an attorney," United States v. Zamora, 222 F.3d 756, 765-66 (10th Cir. 2000); "I think I need a lawyer," Burket v. Angelone, 208 F.3d 172, 198 (4th Cir. 2000); "Do you think I need an attorney here?," Mueller v. Angelone, 181 F.3d 557, 573-74 (4th Cir. 1999); I "might want to get a lawyer then, huh?," United States v. Posada-Rios, 158 F.3d 832, 867 (5th Cir. 1998); "I think I want a lawyer," "Do you think I need a lawyer?," Diaz v. Senkowski, 76 F.3d 61, 63-65 (2d Cir. 1996); "I can't afford a lawyer but is there anyway I can get one," Lord v. Duckworth, 29 F.3d 1216, 1219-21 (7th Cir. 1994).

In this case, the defendant stated to the agents that "he thought it would be best to wait to speak to an attorney." ECF No. 40 *81. The United States did not specifically object to the magistrate judge's finding concerning whether the defendant unequivocally invoked his right to counsel. See ECF No. 42. After reviewing the case law, this Court accordingly finds no clear error in the magistrate judge's conclusion that the defendant did in fact invoke his right to counsel. Therefore, the magistrate judge's report and recommendation is affirmed and adopted regarding this issue.

This Court, however, does not affirm and adopt the magistrate judge's findings concerning whether the statement was the functional equivalent to interrogation. As mentioned above, a suspect cannot be subjected "to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards, 451 U.S. at 484-85. Thus, even when the defendant does invoke his right to counsel, his rights are not violated unless the defendant is subjected to further interrogation, and even then his rights are not violated if he initiates further communication.

In this case, the issue is whether the defendant was subjected to further interrogation. "[T]he term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). Rather than focusing on the intent of the police, the last part of the definition provided by Innis concerns the perceptions of the suspect. Therefore, "[a] practice that the police should know is reasonably likely to evoke an incriminating response from a suspect . . . amounts to interrogation." Id. However, the Supreme Court cautioned that "[i]n deciding whether particular police conduct is interrogation, we must remember the

purpose behind our decisions in Miranda and Edwards: preventing government officials from using the coercive nature of confinement to extract confessions that would not be given in an unrestrained environment." Arizona v. Mauro, 481 U.S. 520, 530-31 (1987). The Court further asserted that "volunteered statements cannot properly be considered the result of police interrogation." Id. at 530.

In Innis, the Court found that a conversation had between two officers in a police cruiser while the defendant was also in the car did not amount to interrogation. Specifically, one of the officers commented on how horrible it would be if the handicapped children at the local school found the gun used in the crime that the defendant was arrested for. At that point, the defendant divulged the location of the gun. The Court said that the lower court was wrong "in equating 'subtle compulsion' with interrogation." Id. at 303. In Mauro, the Supreme Court found that allowing a suspect's wife to see and speak with him and thereafter using that conversation against the suspect did not amount to interrogation. The Court stated that it doubted "a suspect, told by officers that his wife will be allowed to speak to him, would feel that he was being coerced to incriminate himself in any way." Id. at 528. Further, the Court stated there was no evidence that the defendant was "subjected to compelling influences, psychological ploys, or direct questioning." Id. at 530.

This Court finds that the agent's statements to the defendant did not amount to interrogation. First, the statements did not involve direct questioning. The agent merely made an informative comment to the defendant prior to the agent's departure. Next, there is no evidence that the agent's action amounted to a compelling influence, or psychological ploy. The agent merely stated he would leave if the defendant did not have any further questions. Further, there is no basis for asserting that the defendant "would feel that he was being coerced to incriminate himself in any way." The agents had stopped the interview and were preparing to leave when the comment was made. It is hard to conceive how the defendant would feel or perceive that he had to make any further statements to the agents at that point. Moreover, it is not likely that the agent knew or should have known that the comment was "reasonably likely to elicit an incriminating response from the suspect," because as mentioned above, there is no evidence the agent was using any compelling influence, he was merely stating that the agents would leave if the defendant did not have any further questions. This Court therefore, declines to adopt and affirm the magistrate judge's report and recommendation regarding whether the agent's comment constituted interrogation.

V. <u>Conclusion</u>

For the above stated reasons, this Court AFFIRMS AND ADOPTS the magistrate judge's report and recommendation concerning the

suppression of evidence and DECLINES TO AFFIRM AND ADOPT the report and recommendation concerning the suppression of statements in its entirety. Accordingly, defendant's motion to suppress statements (ECF No. 20) is DENIED and defendant's motion to suppress evidence (ECF No. 21) is also DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:   January 15, 2013

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE